ELLA I. COOLEY v. WILLIAM H. HARRIS AND ANNA
HARRIS.

*Equity practice—Assignment of mortgage—Rights of assignee—
Priorities.*

1. Where all of the facts entitling a defendant to affirmative relief
are set up in his answer, which contains no specific prayer for
relief, equity will not hesitate to decree substantial justice,
treating the prayer as amended.

2. A father sold certain land, the title to which was in his son's
name for convenience merely, and the son executed a full
covenant warranty deed to the purchaser, who mortgaged
that and other land to the father to secure the payment of
the purchase price, covenanting for its payment, but giving
no note with the mortgage. The land had been incumbered
by two mortgages, to the knowledge of the father, who
fraudulently represented to the purchaser that they had been
paid, and, in reliance upon such representations, he made the
purchase and gave the mortgage without examining the
records, the father's business then being the making of
abstracts of title in the county in which the land was
situated. The mortgage was assigned, and the assignment
recorded, before the maturity of the debt, and the assignee
sought to foreclose the mortgage in chancery. And it is held
that the mortgage is subject to all of the equities between the
mortgagor and mortgagee in the hands of the assignee, and a
decree deducting the amount of the prior mortgages from the
amount due on the mortgage sought to be foreclosed is
affirmed.

Appeal from Branch. (Loveridge, J.) Argued April
20, 1892. Decided June 10, 1892.

Bill to foreclose a mortgage. Complainant appeals.
Decree affirmed. The facts are stated in the opinion.

*Charles N. Legg,* for complainant, contended:

1. Where a suit is instituted to obtain the benefit of an executed

contract, a defense founded on the conduct of the parties must be by cross-bill; citing Story, Eq. Pl. § 393.

2. The defendants in their answer insert no prayer for relief. Still, they ask, in substance and effect, " affirmative relief." They ask that the court find that fraud has been committed, and that by reason thereof the mortgage and mortgage debt be declared void, and they held relieved from any obligation thereunder. Such defenses should be made by cross-bill; citing *Andrews v. Kibbee*, 12 Mich. 96; *Sloan v. Holcomb*, 29 Id. 153; *Lumber Co. v. Gustin*, 54 Id. 624; *McGuire v. Circuit Judge*, 69 Id. 594; 2 Daniell, Ch. Pr. (3d ed.) 1647.

3. The answer cannot be considered as falling under Chancery Rule No. 123, for by that rule the defendants must claim the benefit and relief they expect, and state the facts with the same particularity and certainty that they would by a cross-bill; citing *McGuire v Circuit Judge*, 69 Mich. 595.

4. If the charges of fraud against Phineas and Garber A. Nichols are sustained in this suit, and the complainant be made to suffer therefor in the loss of her securities, she would be entitled to a remedy against her assignor, Phineas Nichols; and, inasmuch as he is not a party in this case, can he be held liable by the complainant without being able to deny the charge in an action by complainant against him? While it has been held that new parties may not be added by a cross-bill, that does not seem to be a rule of universal application; citing *Jones v. Smith*, 14 Ill. 229; Story, Eq. Pl. § 399 (note *a*).

5. When it appears to the defendants that by complainant's bill there are parties wanting whose appearance in a case is necessary in order to make a complete defense, the answer should set up that fact, and the complainant be required to bring them in as parties to the case; citing 1 Daniell, Ch. Pr. (3d ed.) 287, and cases cited.

6. It is obvious that Phineas Nichols is directly interested, because, if the cause relied upon by the defendants be true, he is liable to the complainant for the amount of her loss, brought about by his alleged fraud. He has a right to be heard. It is not true that the complainant stands in his place in this respect. Assuming that complainant took her mortgage subject to all equities between Phineas Nichols and Harris, it does not follow that Phineas Nichols is not in any event a party to the suit, It is true that for the purposes of foreclosure he is not a party, but for the purposes of the defense urged he should be. When it is manifest that a decree will have the effect of depriving third parties of their legal rights, it is incumbent on the court to notice the fact on the hearing, and the proper

course in such a case is to order the cause to stand over to enable the complainant to bring such necessary parties before the court; citing 1 Daniell, Ch. Pr. (3d ed.) 287, and cases cited; 1 Jones, Mort. § 968; *Mason v. Daly,* 117 Mass. 403.

7. In order that the defendants may be heard to say that this executed contract is void for the fraudulent representations claimed by them to have been made as an inducement to give the mortgage, it must clearly appear that the representations complained of were not only false, but that defendants were deceived thereby, and that the false representations of Phineas Nichols, of which the defendants make complaint, were the sole and direct cause which led them to act. If they relied upon other facts and representations, or upon their own knowledge, they cannot now claim relief. In the testimony of defendant William H. Harris is found this question and answer:

" Q. Did you rely upon his representations that the land was free from all incumbrances?

" A. I did, and because he was giving me a warranty deed, and the abstract convinced me that it was right. I had confidence in him."

From this it appears that the warranty deed was an important factor upon which he relied. This warranty deed was not the deed of Phineas Nichols. How shall the court determine how much defendant relied on the verbal representations of Phineas Nichols, and how much upon the warranties of Garber A. Nichols, and how much was due to his confidence, and how much to the abstract? citing *Atlantic Delaine Co. v. James,* 94 U. S. 207; *Development Co. v. Silva,* 125 Id. 247.

8. While one who is sued for fraud is estopped from claiming that the plaintiff's previous knowledge was enough to protect him, still, where one claiming to have been defrauded sues to rescind or have declared void an executed contract which he entered into by reason of such fraudulent statements to him, he must affirmatively show that his reliance on such fraudulent statements was reasonable. It is not enough to say that false statements were made, and that he relied upon them. One cannot shut his eyes to means of information at hand, and then claim relief from all the misdoings of his fellow-men with whom he deals. We submit that this record shows that the parties to this mortgage were upon an equal footing in respect to facts concerning which fraudulent statements are claimed by defendants to have been made. With previous knowledge of the mortgages, and with means of information at hand as to the state of the title, purchasers must be held to use them; citing *Converse v. Blumrich,* 14 Mich. 109; *Finlayson v. Finlayson,*

17 Oreg. 347; *Ramsey v. Wallace*, 100 N. C. 75; *Anderson v. Rainey*, Id. 321 Kerr, Fraud & Mis. 86, 140, 236, 316; *Dirkson v. Knox*, 71 Iowa, 728; *Poland v. Brownell*, 131 Mass. 138; *Insurance Co. v. Reed*, 33 Ohio St. 283; *Brown v. Leach*, 107 Mass. 364; *Long v. Warren*, 68 N. Y. 426; *Parker v. Moulton*, 114 Mass. 99; *Schwabacker v. Riddle*, 99 Ill. 343; *Mamlock v. Fairbanks*, 46 Wis. 415.

9. One claiming relief by reason of the fraud of another should act promptly, and the courts will not usually rescind an executed contract for fraud if the parties cannot be placed *in statu quo*. Before the mortgage can be held void for fraud, the mortgagor must redeed to the vendor; citing 1 Jones, Mort. § 625; *Sanborn v. Osgood*, 16 N. H. 112.

10. A tender of a deed to complainant in this case is no satisfaction to the grantor of the land. There is no agency shown in this case by which the representations of Phineas Nichols, or any other of his acts, are binding on the grantor; citing *Grymes v. Sanders*, 93 U. S. 62; *Merrill v. Wilson*, 66 Mich. 232; *Stevenson v. Polk*, 71 Iowa, 278; *Neal v. Reynolds*, 38 Kan. 432.

11. While the rule is generally stated to be that the assignee of a mortgage takes it burdened with all the equities existing between the parties to it, the rule is somewhat harsh, and ought not to be extended. An assignee cannot be properly burdened with equities between one of the parties and a stranger to the mortgage. That by which the assignee is burdened must be an equity between original parties,—not simply a speculative or possible wrong; citing 1 Jones, Mort. § 843.

*Frank D. Newberry,* for defendants, contended:

1. In the hands of Nichols, proof of fraud in procuring the mortgage would be a good defense to a suit for foreclosure; citing 2 Jones, Mort. § 1492; and it may be a defense to the whole claim, or it may be a defense in part, and available as a counterclaim.

2. Fraudulent concealment of the nature of his title by the vendor, or fraudulent representations in regard to it, are grounds for the rescission of a contract, although the title and incumbrances are of record; citing *Campbell v. Whittingham*, 5 J. J. Marsh, 96 (20 Amer. Dec. 241); *Abbott v. Allen*, 2 Johns. Ch. 519 (7 Amer. Dec. 554); *Parham v. Randolph*, 4 How. (Miss.) 435 (35 Amer. Dec. 403); Bigelow, Fraud, 68, 305.

3. The defendants were induced to forbear inquiry by the representations of Nichols that he had the books and papers right

there, and knew all about it, and that the lands were free and clear of all incumbrances. Nichols had made indorsements on the Carter and Mains mortgages ever since the latter was given, in 1877, and knew that they were in existence and undischarged, and took this method to prevent inquiry by defendants; citing Bigelow, Fraud, 68.

4. Nichols had been deputy register of deeds, and was then engaged in furnishing abstracts of titles. From his standing and employment, he was in a position to impose upon defendants. The parties were on an unequal footing; citing *Mitchell v. Zimmerman*, 4 Texas, 75 (51 Amer. Dec. 717); *Atwood v. Chapman*, 68 Me. 38 (28 Amer. Rep. 5).

5. In the hands of the complainant as assignee, the mortgage is subject to all the equities between the defendants and Nichols; citing *Nichols v. Lee*, 10 Mich. 526; *Terry v. Tuttle*, 24 Id. 213; *Cooper v. Smith*, 75 Id. 247; *Dutton v. Ives*, 5 Id. 515; *Castle v. Castle*, 78 Id. 298.

6. The defendants made tender of a deed of the premises purchased, and asked that complainant's bill be dismissed. The court granted a decree in favor of complainant for the amount of her mortgage, less the prior incumbrances and the costs of their foreclosure. Can this decree be sustained under the pleadings and proofs? The authority to render such judgment or decree as substantial justice may require, in proceedings for the foreclosure of a mortgage, is inherent in a court of equity; citing 3 Wait, Act. & Def. 419.

7. In the absence of a cross-bill, affirmative relief, not responsive to the prayer of the complainant's bill, may be decreed when the equities of the whole case, disclosed by the pleadings and proofs, require it; citing *Owings' Case*, 1 Bland, Ch. 370 (17 Amer. Dec. 341).

8. When a court of equity obtains jurisdiction of a subject-matter for any purpose, it will retain it for all purposes of affording adequate and full relief between the parties; citing *Wallace v. Wallace*, 63 Mich. 330; *Whipple v. Farrar*, 3 Id. 436; *Miller v. Stepper*, 32 Id. 194.

McGRATH, J. This is a bill filed to foreclose a mortgage dated June 11, 1886, given by defendants upon parcels A, B, C, D, and E, shown in the diagram on next page.

The bill alleges that parcels A and E were by mistake

described in the mortgage as the E. ½ of the N. W. ¼, and that the parcel B was described as in the S. W. ¼ instead of the S. E. ¼; that at the time of the execution of the mortgage defendants owned no part of the E. ½ of the N. W. ¼, or of the S. W. ¼, but did own the E. ½ of the N. E. ¼ and parcel B of the S. E. ¼, and that the land intended to be described was the E. ½ of the N. E. ¼ and said parcel B; and the prayer is for a reformation of the mortgage accordingly, as well as for the foreclosure.

The answer sets up that on April 12, 1875, defendant William H. Harris owned parcels A and B; that on that date he gave a mortgage to one Carter for $400 on said parcels; that November 12, 1877, desiring to take up the Carter mortgage, Harris, through one Phineas Nichols, obtained a loan of $700 from one Mains, and gave a

mortgage upon parcels A and B; that Mains agreed to take up and discharge the Carter mortgage, and retained out of the consideration of the mortgage the sum of $440 for that purpose, paying to Harris but $260; that in April, 1878, defendants sold and conveyed by warranty deed, subject to the Mains mortgage of $700, parcels A and B to one Miller; that in 1878 Harris acquired parcel C, and in November, 1879, he purchased parcel D; that on June 11, 1886, defendants went to the office of Phineas Nichols, whose business was, and for a long time prior thereto had been, the making of abstracts of titles in said county, and that Nichols told defendants that he was then the owner of parcels A, B, and E, and that he was desirous of selling the same.

"That he then falsely and fraudulently, and with intent to deceive and defraud these defendants, and well knowing such statements to be false and untrue, informed these defendants that said lands were free and clear from any and all liens and incumbrances; that he further stated, with like intent to deceive and defraud these defendants, that he had examined the records of the title to said lands, and had made an abstract thereof, and that the records showed said lands to be free and clear from all liens and incumbrances, whereas the facts were that the records showed, as these defendants are now informed and verily believe, and so charge the truth to be, that said lands were incumbered, and the said Phineas Nichols well knew that his statement in this respect was wholly false and untrue.

"These defendants further aver that the said Phineas Nichols made the foregoing false and fraudulent representations, well knowing the same to be false and fraudulent, and for the purpose and with the design of deceiving and defrauding these defendants; that he well knew that the mortgages hereinbefore referred to as the Carter mortgage and the Mains mortgage had not been discharged of record, and that they were still liens and incumbrances on the lands he was trying to sell to these defendants.

"These defendants further aver that they relied upon the false and fraudulent statements so made as aforesaid by the said Phineas Nichols, believing him to be well qualified by his acquaintance with titles of lands in said county, and his business as a maker of abstracts, to know as to the title to the lands he was offering for sale, and thereupon agreed to purchase the same for the sum of fourteen hundred and fifty dollars; that the said Nichols thereupon made out a warranty deed of said lands, and had his son, one Garber A. Nichols, then present, sign and acknowledge the same, explaining to these defendants that, although he himself owned said lands, he had had the prior deed made out in his son's name instead of his own, for convenience of transfer; that thereupon these defendants, fully relying upon the false and fraudulent representations of the said Phineas Nichols as hereinbefore set forth, and believing that they were getting full, complete, and perfect title to said lands, free and clear from all liens and incumbrances, made, executed, and delivered to the said Phineas Nichols the covenant mortgage sought to be foreclosed in this suit, covering, as they supposed, the lands so purchased of the said Nichols as well as the lands of these defendants, situate upon section eight, and hereinbefore described; that the said Phineas Nichols drew the said mortgage, and the same was signed and acknowledged by these defendants, and thereupon they received the deed, and the mortgage was delivered to the said Nichols, the mortgagee named therein. These defendants aver that the giving of said mortgage was upon the consideration that the representations of the said Nichols were true, and on no other consideration.

The answer contains no prayer except that the bill be dismissed.

The court found the allegations of the answer to be true, and made a decree reforming complainants mortgage, finding the amount of that mortgage to be $1,847.91, deducted the amount of the Carter mortgage, and also the amount of the Mains mortgage, from the sum of complainant's mortgage, and gave a decree for $560.36. From this decree complainant appeals.

Nichols appears to have acted for the owner of the

Carter mortgage, as all of the indorsements thereon are in his handwriting, the last of which bears date November 17, 1887. All of the indorsements on the Mains mortgage are also in the handwriting of Nichols, the last of which bears date September 6, 1888. There is no question but that Nichols was in fact the owner of parcels A, B, and E at the time of the conveyance to Harris, and that the title stood in the son's name for convenience merely, and it is clear that Nichols had clear knowledge of the existence of the Carter and Mains mortgages, and fraudulently misrepresented to defendants that those mortgages had been paid. In the hands of complainant the mortgage is subject to all the equities between the defendants and Nichols.[1] *Dutton v. Ives,* 5 Mich. 515; *Nichols v. Lee,* 10 Id. 526; *Terry v. Tuttle,* 24 Id. 213; *Cooper v. Smith,* 75 Id. 247; *Castle v. Castle,* 78 Id. 298.

It is contended that the answer contains no prayer for affirmative relief. The facts upon which the relief granted is based are fully set up in the answer, although not followed by a specific prayer for the relief to which such facts clearly entitle the defendants, and in such a case a court of equity will not hesitate to decree substantial justice, treating the prayer as amended.

We think, however, that the court erred in deducting from the amount of the complainant's mortgage the amount of the Carter mortgage. Upon defendant's own showing, Mains agreed to cancel and discharge the Carter mortgage, and Mains withheld $440 for that purpose. If that is true, defendants should have made that defense in the proceeding to foreclose the Mains mortgage, and were entitled to have offset in that proceeding

---

[1] No note was given with the mortgage, but it contains an agreement to pay the mortgage debt, and was assigned to the complainant before maturity of said debt, and the assignment duly recorded on the day of its date.

the amount of the Carter mortgage. So far as appears, complainant is a purchaser in good faith of the Nichols mortgage. Defendants had full knowledge of the facts regarding the Mains mortgage. It does not appear that originally the duty to discharge that mortgage devolved upon Nichols, but upon Mains. So far as that mortgage was a valid one, defendants were entitled to protection against it, and to that extent only was Nichols subsequently obligated to discharge it; but to the knowledge of defendants it also was subject to the equities growing out of the agreement to discharge the Carter mortgage, and the fact that of the $700 for which it was given the mortgagors, who were the defendants, actually received but $260.

In this respect the decree will be modified; otherwise it is affirmed, with costs to complainant.

LONG, GRANT, and MONTGOMERY, JJ., concurred. MORSE, C. J., did not sit.

---

Defendants subsequently applied for a rehearing, and on July 28, 1892, the following opinion was filed:

McGRATH, J. On application of defendants for a rehearing in this cause, it appears that the record was defective, in that it failed to set forth that, in the proceeding to foreclose the Mains mortgage, the defendant Harris did set up and insist that a part of the consideration for said mortgage was the agreement on the part of Mains to pay, and cause to be discharged, the Carter mortgage, but the court below made a decree in favor of Mains for the full amount of his mortgage. It is now conceded that such was the fact.

Complainant here was a co-defendant with Harris in the proceeding to foreclose the Mains mortgage. Harris,

having set up the defense and prosecuted it to final decree, must be held to have discharged his duty in that regard.

The former opinion will therefore be modified, and the decree of the court below affirmed, with costs to defendants.

The other Justices concurred.